## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| _____ ) | |
| BERNARD ESHELMAN, Individually and on ) behalf of all others similarly situated, ) ) | |
| ) | Civil Action No. 3:12-cv-1482 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PRESSTEK, INC., STANLEY E. FREIMUTH, ) EDWARD E. BARR, DANIEL S. EBENSTEIN, ) STEVEN N. RAPPAPORT, DONALD C. WAITE ) III., MAI HOLDINGS INC., MAI MERGER ) CORP., AMERICAN INDUSTRIAL PARTNERS, ) | JURY TRIAL DEMANDED |
| AMERICAN INDUSTRIAL PARTNERS ) CAPITAL FUND IV, L.P. ) | OCTOBER 16, 2012 |
| ) | |
| Defendants. ) | |
| _____) | |

## CLASS ACTION COMPLAINT

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief, including the investigation of counsel and publicly available information, as to all other matters.

## SUMMARY OF THE ACTION

1.      This is a class action brought by Plaintiff on behalf of holders of the common stock of Presstek, Inc. ("Presstek" or "Company") to enjoin the acquisition of the publicly owned shares of Presstek by American Industrial Partners ("AIP").

2.      On August 23, 2012, Presstek announced that it had entered into a definitive merger agreement under which AIP will acquire the stock of Presstek for a total of approximately $21 million ("Proposed Transaction").  Under the terms of the agreement ("Merger Agreement"), AIP will merge with and into the Company

("Merger"), with the Company continuing as the surviving corporation.  As a result of the Merger, each share of the Company's common stock issued and outstanding immediately prior to the effective time of the Merger will be converted into the right to receive $0.50 in cash, without interest ("Consideration").

3.        In approving the Proposed Transaction, the Individual Defendants have violated certain securities laws and breached their fiduciary duties by, among other things, agreeing to sell to AIP without obtaining adequate, fair and maximum consideration under the circumstances. Under the Proposed Transaction, Presstek shareholders would receive $0.50 per share. This amount is inadequate because, among other reasons, Presstek was trading at $0.83 per share as recently as May 1, 2012.

4.        In addition, the Proposed Transaction consideration fails to adequately compensate Presstek's shareholders for the significant synergies created by the merger. Thus, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to AIP.

5.        The Board has exacerbated its breach of fiduciary duties by agreeing to lock up the Proposed Transaction with deal protective devices that preclude other bidders from making a successful competing offer for the Company. Specifically, in Section 5.2 and 8.2 of the Merger Agreement, defendants agreed to: (i) a strict "no solicitation" provision that prevents the Company from soliciting other potential acquirers or even continuing discussions and negotiations with potential acquirers; (ii) a provision where the Company must inform AIP before taking action on any proposal from another potential acquirer, and requiring that the Board provide all information relating to the superior proposal (including the terms and identity of the suitor), (iii) a provision that

requires the Board to negotiate with AIP so that it can match any competing proposal; and (iv) a provision that requires Presstek to pay AIP a significant termination fee of $1.5 million.

6.        In addition, by making misleading statements and material omissions in the Company's Proxy Statement dated October 1, 2012 ("Proxy"), defendants violated Section 14(a) of the Exchange Act. As set forth in detail below, the Proxy omits material information thereby rendering shareholders unable to decide whether to vote in favor of the Proposed Transaction. For example, the Proxy omits and/or misrepresents material information concerning: (a) the sales process for the Company; and (b) the data and inputs underlying the valuation analyses that purport to support the so-called "fairness opinion" provided by Presstek's financial advisor, GCA Savvian Advisors, LLC. ("GCA Savvian"). These omissions and misstatements constitute both a breach of defendants' fiduciary duties to shareholders, as well as a violation of Section 14(a) of the Exchange Act. Without the omitted and materially misrepresented information, Presstek's shareholders cannot make a fully informed decision as to whether to vote in favor of the Proposed Transaction.

7.        In pursuing the unlawful plan to facilitate the acquisition of Presstek by AIP for inadequate consideration and through a flawed process, each of the defendants violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.

8.        For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin  Defendants from taking any steps to consummate the Proposed Transaction or, in

the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' (as defined herein) violations of their fiduciary duties of loyalty, good faith, due care, and full and fair disclosure.

## JURISDICTION AND VENUE

9.      Jurisdiction is founded upon federal question jurisdiction, pursuant to § 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

10.      Venue is proper under 28 U.S.C. §1391(b)(2) because Presstek maintains its offices in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District. Moreover, each of the Individual Defendants as Company officers and/or directors has extensive contacts within this District.

## PARTIES

11.      Plaintiff was, and at all relevant times is, a continuous stockholder of Defendant Presstek.

12.      Defendant Presstek is a corporation organized and existing under the laws of the State of Delaware with its principal executive offices located at 10 Glenville Street, Third Floor, Greenwich, Connecticut 06831.

13.      Defendant Stanley E. Freimuth has served as Chairman of the Board of Directors of the Company, as President, and as Chief Executive Officer of the Company since 2009.

14.      Defendant Edward Barr has served as a director of the Company since September 2008, and was elected Lead Director in June 2009.

15.     Defendant Daniel S. Ebenstein has served as a director of the Company since November 1999.

16.     Defendant Steven N. Rappaport has served as a director of the Company since November 1999.

17.     Defendant Donald C. Waite III has served as a director of the Company since July 2002.

18.     Defendants Freimuth, Barr, Ebenstein, Rappaport, and Waite are collectively referred to herein as the "Board" or the "Individual Defendants."

19.     Defendant MAI Holdings, Inc. ("MAI Holdings") is a Delaware corporation.

20.     Defendant MAI Merger Corp. ("Merger Sub") is a Delaware corporation and a wholly-owned subsidiary of MAI Holdings.

21.     Defendant AIP is a middle market private equity firm located at 535 Fifth Avenue, 32nd Floor, New York, NY 10017.

22.     Defendant American Industrial Partners Capital Fund IV, L.P. ("AIP Capital") is a Delaware limited partnership with its corporate headquarters located at 535 Fifth Avenue, 32nd Floor, New York, NY 10017.

23.     Collectively, Presstek, the Individual Defendants, MAI Holdings, Merger Sub, AIP, and AIP Capital are referred to herein as the "Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

I.      **Background of the Company**

24.     Presstek is a leading developer of digital laser imaging and chemistry-free plate technologies for the printing, communications and graphic arts industries.

Since the Company's incorporation in 1987, Presstek has offered innovative digital offset printing solutions for commercial printing applications. The Company: (1) invented the technology that enables direct imaging presses; (2) invented chemistry-free printing plates; (3) has significantly streamlined the print production workflow; (4) has helped transition offset printing from a craft-based manual process to an automated manufacturing process; and (5) has planned to continue to innovate by providing high quality fully integrated digital solutions and services. Furthermore, using digital information and high-powered semiconductor laser diodes to create images in its unique consumable plate products, Presstek's patented direct imaging and plate technologies are marketed to the world's leading press manufacturers and used in the company's Dimension series of computer-to-plate off-press plate making equipment. Presstek's direct imaging and plate technologies eliminate photographic darkrooms, film and toxic processing chemicals, reduce the turnaround time for printers, and lower printers' cost of production. Not surprisingly so, Presstek's direct target market short-run color is one of the fastest growing segments of the printing industry. The Company is the holder of over 400 patents, and has been the recipient of many GATF InterTech awards and has been recognized by numerous other industry sources for innovation in business and technology

      25.      In a recent press release issued by the Company on August 8, 2012, the Company reported that its second quarter financial results reaffirmed expectations that it would have a positive adjusted EBITDA for 2012. Specifically, the press release stated:

> The Company generated positive adjusted EBITDA of $0.8 million for the quarter, an increase of $0.4 million from the prior year. The Company had an operating loss of $0.3 million in the second quarter of 2012 versus an operating loss of $1.2 million in the 2011 second quarter, an improvement of $0.9 million. Cost reduction actions undertaken in the latter half of 2011 contributed significantly to this improvement. During the second

quarter of 2012, the Company incurred a net loss of $0.8 million, or $0.02 per share, compared to a net loss of $1.7 million, or $0.05 per share, in the second quarter of 2011.

26.     In the same press release, the Company's Chairman, CEO, and President noted Presstek's positive growth forecast by stating:

> While we continue to experience the effects of the difficult economic climate, especially in Europe, our quarterly results reflect continued improvement in EBITDA and a narrowing of our quarterly operating loss. While these results are in large part due to our cost management efforts, we believe that we are positioned for improving results once the overall economic environment improves.

## II.     The Proposed Transaction

27.     On August 23, 2012, Presstek issued a press release announcing the Proposed Transaction:

> Greenwich, CT – August 23, 2012 – Presstek, Inc. (NASDAQ: PRST), a leading supplier of digital offset printing solutions to the printing and communications industries ("Presstek"), today announced that it has entered into a definitive merger agreement under which it would be acquired by MAI Holdings, Inc., an entity affiliated with American Industrial Partners Capital Fund IV, L.P. ("AIP").

> Under the terms of the agreement and plan of merger, which has been unanimously approved by the Company's Board of Directors, Presstek's shareholders will receive $0.50 in cash for each share of Common Stock. This represents a premium of 16.3% over closing share price of the Common Stock on August 22, 2012. The agreement is subject to the approval of shareholders and other customary closing conditions and is expected to close during the fourth quarter of 2012. In connection with the transaction, AIP has obtained the agreement of Presstek's largest shareholder, IAT Reinsurance Company, Ltd. and its affiliates, which own 24.5% of the outstanding Common Stock, to vote in favor of the merger at the special shareholders meeting to be called for that purpose, subject to certain conditions.

> In announcing the agreement, Stanley E. Freimuth, Presstek's Chairman, President and CEO, said: "We are excited to combine the financial resources of AIP with the strong product portfolio of Presstek. We believe that this combination will help to fuel the growth of the Company, which has been challenging over the past few years as a result of the worldwide economic downturn. AIP is no stranger to our industry. One of its portfolio companies, Mark Andy, Inc., is the world's leading designer of narrow and mid-web

flexographic equipment and aftermarket products serving the label, packaging and specialty printing markets. We look forward to working with Mark Andy in areas where it makes sense for both companies."

AIP is an operationally focused private equity investment firm that applies a collaborative approach with management in building and improving middle-market companies. In commenting on the transaction, Richard Hoffman of AIP said "Presstek represents a very attractive portfolio investment for AIP. The company has best-in-class technologies, headlined by its highly efficient and versatile 75DI digital offset printing press, and we look forward to partnering with Presstek's management team to help the company and its product portfolio achieve their full potential."

GCA Savvian Advisors, LLC has served as financial advisor and McDermott, Will & Emery, LLP has served as legal counsel to Presstek in connection with this transaction. Ropes & Gray, LLP has served as legal counsel to AIP in connection with this transaction.

28.     As discussed herein, the $0.50 per share consideration offered in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of Presstek's common stock is materially in excess of the amount offered in the Proposed Transaction, and the process by which the Proposed Transaction was completed is unfair to the Class. In short, the Proposed Transaction undervalues Presstek.

## III.    The Unfair Price

29.     As discussed herein, the $0.50 per share consideration offered in the Proposed Transaction is inadequate. Presstek, if properly exposed to the market for corporate control, would bring a price materially in excess of the amount offered in the Proposed Transaction.

30.     Presstek has a demonstrated history of strong financial performance and significant upward potential of moving forward. For example, the Company has reported a book value of $1.01 per share for the most recent quarter, a 52 week high of $1.01, the Company's shares traded above the merger price as recently as two weeks prior to the

announcement of the merger, and at least one analyst has set a price target for the stock at $3.00 per share.

31.     In addition, the Company has recently been lauded by premier printers internationally, such as RCS of PLC of Retford ("RCS'), one of the UK's most prestigious printers occupying a 43,000-square-foot state-of-the-art facility as offering products of unparalleled quality.  In a recent press release issued by the Company, dated August 2, 2012, RCS noted:

> The Presstek 75DI will allow us to continue to meet and exceed our customers' expectations. Its 6-minute make-ready means we can profitably handle more jobs in one day on a single press than we could with our previous configuration at quality levels that we believe will thrill our customers. We also look forward to leveraging the 75DI to help our Resellers increase their activity. We're really looking forward to getting this press installed.

32.     The Proposed Transaction's consideration fails to adequately compensate Presstek shareholders for the significant benefits and synergies that will be realized by AIP in the Merger. The Proposed Transaction is an attractive strategic acquisition for AIP. As mentioned above, Richard Hoffman of AIP commented about the merger that:

> Presstek represents a very attractive portfolio investment for AIP. The company has best-in-class technologies, headlined by its highly efficient and versatile 75DI digital offset printing press. . . .

33.     Despite the significant benefits and synergies inherent in the Proposed Transaction for AIP, however, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to AIP.

34.     As these indicators make clear, Presstek, if properly exposed to the market for corporate control, would bring a price materially in excess of the amount

offered in the Proposed Transaction.

**IV.    The Company's Board and Executive Officers Stand to Receive Unique and Substantial Financial Benefits in the Proposed Transaction Not Available to the Company's Public Shareholders**

35.    The Company's executive officers and directors have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of Presstek's public shareholders.

**A.    Vesting of Shares**

36.    Specifically, according to the Proxy, the Proposed Transaction creates a condition under which insiders' stock options and restricted stock units will vest, entitling each of them to receive substantial compensation.

37.    For example, according to Section 2.4(b) of the Merger Agreement:

> Prior to the Effective Time, the Company Board (or, if appropriate, any committee thereof) shall adopt appropriate resolutions and take all other actions necessary and appropriate to provide that, (i) immediately prior to the Effective Time, each outstanding restricted stock unit (the "Restricted Stock Units") and outstanding restricted stock award (the "Restricted Stock Awards") under the Company Equity Plans shall become immediately vested and distributable upon the consummation of the Merger, and (ii) each vested Restricted Stock Award shall be cancelled and the holder thereof shall be entitled to receive the Merger Consideration in respect of each Share underlying the cancelled vested Restricted Stock Award in accordance with Section 2.1(c) hereof.

38.    Certain members of the Company's management also stand to benefit from change-of-control severance payments. Those severance payments amount to approximately $2.7 million. Messr. Freimuth, in particular, stands to gain an estimated $1,345,500 as a result of the Proposed Transaction.

**B.    Voting Agreements**

39.    In exchange for the benefits outlined above, the Presstek Board and

certain members of Presstek's management entered into voting agreements with AIP. The voting agreements provide that they will vote all of their shares of Presstek stock: (a) in favor of the adoption of the Merger Agreement; and (b) against any alternative business combination involving Presstek. Although the Company's Board members were obligated to maximize shareholder value, they somehow managed to negotiate voting agreements in their own interests. Notably, the Proxy provides no discussion as to how or why these voting agreements were negotiated and executed.

**V.     The Board Improperly Agreed to Certain Deal Protection Devices**

40.     The Merger Agreement has a number of provisions that makes it more difficult for another buyer to purchase the Company.

41.     The Merger Agreement prohibits the Company and its agents from soliciting additional bids for the Company ("No Solicitation Provision"). The No Solicitation Provision precludes the Company from: (i) participating in any negotiations regarding, or furnish to any person any material nonpublic information with respect to, any Competing Proposal[1]; (ii) engaging in discussions with any person with respect to any Competing Proposal; (iii) approving or recommending, or proposing publicly to approve or recommend, any Competing Proposal; (iv) withdrawing, amending, or modifying or otherwise proposing publicly to withdraw, amend or modify, in a manner adverse to parent or purchaser, the Company's Board's recommendation; (v) entering

---

[1] Pursuant to the Merger Agreement, "Competing Proposal" is defined as, any proposal made by a Person or group, within the meaning of Section 13(d) of the Exchange Act (other than a proposal or offer by Parent or any of its Subsidiaries) at any time which is structured to permit such Person or group to acquire beneficial ownership of at least 20% of the assets of, equity interest in, or businesses of, the Company (whether pursuant to a merger, consolidation or other business combination, sale of shares of capital stock, sale of assets, tender offer or exchange offer or otherwise, including any single or multi-step transaction or series of related transactions), in each case other than the Merger.

into any letter of intent, memorandum of understanding or similar document or any agreement, document or commitment providing for any Competing Proposal; or (vi) agreeing to do any of the foregoing (any act or failure to act relating to clauses (iv) or (v) above, a "Change of Recommendation"). The Company may only furnish nonpublic information and participate in negotiations or discussions if the Board concludes in good faith that a Competing Proposal is likely to result in a Superior Proposal.[2]

42.      Moreover, pursuant to the Merger Agreement, the No Solicitation Provision requires that Presstek shall provide written notice to AIP of such Competing Proposal provided further that such notice to AIP shall identify the Person making, and indicate in reasonable detail the terms and conditions of, such Competing Proposal.  The Company shall keep AIP informed, on a reasonably current basis of any material developments of the status and details of any Competing Proposal or inquiry (including whether such Competing Proposal or inquiry has been withdrawn or rejected and any material change to the terms thereof). Notwithstanding the foregoing, the Company shall have the right to (1) waive the provisions of any acceptable Confidentiality Agreement to allow another person to make a Competing Proposal on a non-public basis to the Company and the Company Board of Directors, and (2) following the receipt of a written and unsolicited Competing Proposal, contact the Person submitting the Competing

---

[2] Pursuant to the Merger Agreement, "Superior Proposal" means a bona fide written Competing Proposal for or in respect of at least a majority of the outstanding Company Common Stock or all or substantially all of the Company's assets, made by any Person that the Company Board of Directors determines in good faith, after consultation with the Company's financial and legal advisors, and considering such factors as the Company Board of Directors considers to be appropriate, is reasonably likely to be consummated in accordance with its terms, taking into account all legal, regulatory and financial aspects (including certainty of closing) of the proposal and the Person making the proposal, and that, if consummated, would result in a transaction more favorable from a financial point of view to the stockholders of the Company (in their capacity as such) than the Transactions (including any revisions to the terms of this Agreement proposed by Parent in response to such proposal or otherwise).

Proposal in order to clarify and understand the terms and conditions of the Competing Proposal so as to determine whether the Competing Proposal constitutes or could reasonably be expected to lead to a Superior Proposal. Thus the Merger Agreement unfairly assures that the process will favor AIP by precluding the potential for any rival bidder to emerge.

43.     Additionally, the Board may only change its recommendation of the Proposed Transaction ("Change in Recommendation") to pursue a Competing Proposal under limited circumstances – i.e., if the Board deems another Competing Proposal to be a Superior Proposal. According to the Merger Agreement:

> The Company's Board may not effect a Change of Recommendation relating to a Superior Proposal . . . (i) or terminate this Agreement pursuant to the foregoing clause (ii) unless the Company shall have provided prior written notice to Parent and Purchaser, at least four (4) business days in advance of such Change of Recommendation or such termination (the "Notice Period"), of its intention to effect a Change of Recommendation in response to such Superior Proposal or terminate this Agreement to enter into a definitive agreement with respect to such Superior Proposal, which notice shall specify the material terms and conditions of any such Superior Proposal (including the identity of the Person making such Superior Proposal). Prior to effecting such Change of Recommendation or terminating this Agreement to enter into a definitive agreement with respect to such Superior Proposal, the Company shall, and shall cause its Representatives to, during the Notice Period, negotiate with Parent, if Parent wishes to, in good faith to make such adjustments in the terms and conditions of this Agreement so that such Competing Proposal ceases to constitute a Superior Proposal . . . .

Therefore, under the Merger Agreement,  AIP has limited matching rights discouraging potential competing bids.

44.     In addition, the Merger Agreement provides that a termination fee of $1.5 million in cash must be paid to AIP if the Company determines to pursue a Superior Proposal or if the Board otherwise effects a Change in Recommendation.  Such amount is

wholly disproportional and unreasonable as it will deter other bidders from making a Superior Proposal.

45.     Based on the foregoing, the Merger Agreement contains numerous deal protective devices that will preclude the emergence of competing offers to the benefit of AIP but to the detriment of shareholders who have been deprived of the ability to make an informed decision as to whether to vote in favor of the Proposed Transaction.  By approving the Proposed Transaction containing such deal protective devices, the Individual Defendants have breached their fiduciary duties to shareholders.

## VI.    Defendants Made Material Omissions in the Proxy Statement

46.     It is critical that the shareholders receive complete and accurate information about the Proposed Transaction. To date, defendants have failed to provide the Company's shareholders with that information. As set forth in more detail below, the Proxy fails to disclose material information, including but not limited to: (a) key information about the sales process for the Company; and (b) the data and inputs underlying the financial valuation exercises that purport to support the "fairness opinion" provided by GCA Savvian.

### A.    The Proxy Fails to Adequately Describe the Process that Resulted in the Proposed Transaction

47.     On October 1, 2012, Defendants issued the Proxy containing misleading statements and material omissions that recommended that shareholders vote on in favor of the Proposed Transaction. Specifically, the Proxy fails to disclose:

> a.    the reasons why GCA Savvian was chosen as financial advisor over the one other investment banking firm considered by the Board;

14

b.     whether there were any other financial advisors considered by the Board other than GCA Savvian and the investment banking firm mentioned in the Proxy;

c.     whether any other potential partners contacted Presstek in the previous five months, but were not selected for contact by GCA Savvian;

d.     why "PE Firm A" decided not to submit a final bid to the Company and why the Board did not pursue further discussions with PE Firm A to engage its interest in making a proposal;

e.     details concerning Company's C's potential bid and whether the share price under discussion with Company C prior to the Board's decision to discontinue conversations with it, was competitive with the bid made by AIP;

f.     who from the Company's management was involved in identifying and evaluating potential counterparties to be contacted by GCA Savvian;

g.     when discussing meetings with interested bidders, the Proxy fails to disclose who from the Company was involved in the meeting; and

h.     the process leading up to AIP's revised bid well below its initial indication of $0.80 per share, its interest to re-engage in the bid process in June 2012, and whether the Company prompted AIP to become interested in providing a final bid proposal.

**B.    The Proxy Fails to Provide Adequate Information Concerning GCA Savvian's Analysis and Fairness Opinion**

48.    In the Proxy, GCA Savvian describes its fairness opinion and the various valuation analyses it performed to render its opinion. However, the description fails to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

49.    With respect to the Historical Stock Trading Analysis, (on page 33), the Proxy fails to disclose (a) the criteria used by GCA Savvian to select the "Selected Comparable Companies"; (b) the basis for the time period used in the analysis; and (c) whether any other historical analysis was done (i.e., other time periods).

50.    With respect to the Comparable Company Analysis (on page 34), the Proxy fails to disclose the following multiples for each of the "Selected Comparable Companies": (a) enterprise value to estimated earnings before interest, taxes, depreciation and amortization, or EBITDA, for calendar year 2012, or CY2012E EBITDA, which is referred to herein as "EV/CY2012E EBITDA"; (b) enterprise value to EBITDA for calendar year 2012, or CY2013E EBITDA, which is referred to herein as "EV/CY2013E EBITDA"; and (c) equity value to book value, which is referred to herein as "Price/Book Value".

51.    With respect to the Comparable Transactions Analysis (on page 34-35), the Proxy fails to disclose the following multiples for each of the "Comparable Transactions" selected by GCA Savvian (a) enterprise value to last-twelve-months, or LTM, EBITDA ("EV/LTM EBITDA"); and (b) enterprise value to next-twelve-months EBTIDA ("EV/NTM EBITDA").

52.     With respect to the Discounted Cash Flow Analysis (on page 35), the Proxy fails to disclose: (a) the inputs and assumptions used by GCA Savvian to derive the range of discount rates (9.0% to 15.0%) used in its analysis; (b) the impact of equity-based compensation in the analysis.

53.     The Proxy completely fails to disclose the value of the expected synergies as a result of the Proposed Transaction.

54.     Presstek's public shareholders are being forced to make a decision regarding how to vote their shares without adequate disclosure of material information. Accordingly, Plaintiff will suffer economic harm and losses absent further disclosures in the Proxy.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

55.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other shareholders of Presstek and owe Plaintiff and the other members of the Class (defined herein) the duties of good faith, fair dealing, loyalty and full and candid disclosure.

56.     By virtue of their positions as directors and/or officers of Presstek, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Presstek to engage in the practices complained of herein.

57.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person. In a situation where the

directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision. To diligently comply with this duty, the directors of a corporation may not take any action that:

a.   adversely affects the value provided to the corporation's shareholders;

b.   contractually prohibits them from complying with or carrying out their fiduciary duties;

c.   discourages or inhibits alternative offers to purchase control of the corporation or its assets;

d.   will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

e.   will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

58.   In accordance with their duties of loyalty and good faith, the Individual Defendants as directors and/or officers of Presstek, are obligated to refrain from:

a.   participating in any transaction where the directors' or officers' loyalties are divided;

b.   participating in any transaction where the directors or officers are

entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the public shareholders.

59.      Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff and the other shareholders of Presstek, including their duties of loyalty, good faith, candor, and due care. As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair, or maximum value for their Presstek common stock in the Proposed Transaction.

60.      As a result of these breaches of fiduciary duty, the Company's public shareholders will not receive adequate or fair value for their common stock in the Proposed Transaction.

**CLASS ACTION ALLEGATIONS**

61.      Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 on behalf of all holders of Presstek common stock who are being and will be harmed by Defendants' actions described below ("Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

62.      This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable. As of August 22, 2012, there were 37,498,184 shares of Presstek

common stock issued and outstanding. The actual number of public shareholders of Presstek will be ascertained through discovery.

      b.    There are questions of law and fact that are common to the Class, including:

          i)    whether the Individual Defendants have breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

          ii)    whether the Individual Defendants have breached their fiduciary duty to obtain the best price available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction; and

          iii)    whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

      c.    Plaintiff is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

      d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

      e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to

individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

    f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Brought Individually Against the Individual Defendants and Presstek for Violation of Sections 14(a) & (e))

    63.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

    64.  The Individual Defendants and Presstek have caused the Proxy to be issued with material omissions and misleading statements.

    65.  The Proxy is an essential link in the accomplishment of the Proposed Transaction.

    66.  In the exercise of reasonable care, the Individual Defendants and Presstek should have known that the Proxy is materially misleading and omits material facts that are necessary to render it non-misleading.

    67.  The misrepresentations and omissions in the Proxy are material to Plaintiff, and Plaintiff will be deprived of his right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the vote by shareholders.

### SECOND CAUSE OF ACTION
### (Brought Individually Against the Individual Defendants for Violation of Section 20 (a))

    68.  Plaintiff incorporates each and every allegations set forth above as if fully set forth herein.  The Individual Defendants acted as controlling persons of Presstek

within the meaning of §20(a) of the 1934 act as alleged herein.  By virtue of their positions as officers and/or directors of Presstek and their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

69.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were all involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions which must have had input from the Individual Defendants.  The Proxy at issue contains the recommendation of all but one of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of these documents.

71.     By virtue of the foregoing, the Individual Defendants have violated

§20(a) of the 1934 Act.

72.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated §14(a) & (e) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Individual Defendants are liable pursuant to §20(a) of the 1934 act.  As a direct and proximate result of the Individual Defendants' conduct, Presstek and its shareholders will be irreparably harmed.

### THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty Against the Individual Defendants)

73.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

74.     As alleged herein, Defendants have initiated a process to sell Presstek that undervalues the Company. By agreeing to the Proposed Transaction, Defendants have capped the price of Presstek at a price that does not adequately reflect the Company's true value. Moreover, Defendants failed to sufficiently inform themselves of Presstek's value, or disregarded the true value of the Company.

75.     The Individual Defendants have violated fiduciary duties owed to public shareholders of Presstek, including but not limited to their common law fiduciary duties and/or their fiduciary duties of care, loyalty, good faith, candor, and/or independence owed by each of the Individual Defendants to Plaintiff and each of the other public shareholders of Presstek.

76.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have failed to maximize value for Presstek's public shareholders.

77.     As demonstrated by the allegations above, the Individual Defendants

breached their fiduciary duties owed to the shareholders of Presstek because, among other reasons, they failed to take steps to maximize the value of Presstek to its public shareholders.

78.     As a result of the actions of defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive the highest available value for their equity interest in Presstek.  Unless the Individual Defendants are enjoined by the court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

79.     The Individual Defendants should take whatever action is necessary to cause Presstek to halt the shareholder vote on the Proposed Transaction.

80.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury, which the Individual Defendants' actions threaten to inflict.

**FOURTH CAUSE OF ACTION**
**(Aiding and Abetting the Board's Breaches of Fiduciary Duty against MAI**
**Holdings, Merger Sub, AIP, and AIP Capital)**

81.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

82.     MAI Holdings, Merger Sub, AIP, and AIP Capital have acted and are acting with knowledge of, or with reckless disregard to, the fact that Individual Defendants are in breach of their fiduciary duties to the Company's public shareholders, and have participated in such breaches of fiduciary duties.

83.     MAI Holdings, Merger Sub, AIP, and AIP Capital knowingly aided and

abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, MAI Holdings, Merger Sub, AIP, and AIP Capital rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

84.     MAI Holdings, Merger Sub, AIP, and AIP Capital should take whatever action is necessary to halt the shareholder vote on the Proposed Transaction.

85.     Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representatives and certifying his counsel as class counsel;

B.     Declaring that shareholders should not be asked to vote on the Proposed Transaction, and that such vote should be enjoined;

C.     Declaring that Defendants and each of them have committed a gross abuse of trust and have violated certain securities laws and breached their fiduciary duties owed to Plaintiff and the Class and/or have aided and abetted such violations and breaches;

D.     Declaring that the Proposed Transaction was entered into in breach of Defendants' fiduciary duties and in violation of certain securities laws and was therefore unlawful and unenforceable, and that the Proposed Transaction or other agreements that Defendants entered into in

connection with, or in furtherance of, the Proposed Transaction should be rescinded and invalidated;

E.     Declaring that the Proposed Transaction, the Merger Agreement, and/or the transactions contemplated thereby, should be rescinded and the parties restored to their original position;

F.     Imposing a constructive trust, in favor of Plaintiffs and the Class, upon any benefits, property, or value improperly received by Defendants and/or traceable thereto and/or in the possession of any of the Defendants as a result of their wrongful conduct;

G.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best  available terms for shareholders;

H.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

I.     Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

J.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorney's and experts' fees; and

K.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff and the Class demand a trial by jury as to all issues so triable.

Respectfully Submitted,                    PLAINTIFF

                                          BY:    /s/ Jeffrey S. Nobel
                                                 Jeffrey S. Nobel (CT04855)
                                                 IZARD NOBEL LLP
                                                 29 South Main Street, Suite 215
                                                 West Hartford, CT 06107
                                                 Tel: 860-493-6292
                                                 Fax: 860-493-6290

                                                 BROWER PIVEN
                                                    A Professional Corporation
                                                 David A.P. Brower
                                                 Brian C. Kerr
                                                 488 Madison Avenue, Eighth Floor
                                                 New York, NY 10022
                                                 Tel. (212) 501-9000

                                                 *Attorneys for Plaintiff*